**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **DERRAIL R. THOMAS,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **vs.** | § | |
| | § | |
| | § | **CIVIL ACTION NO. _____** |
| **COGNIZANT TECHNOLOGY** | § | |
| **SOLUTIONS U.S. CORPORATION** | § | |
| | § | |
| | § | |
| *Defendant.* | § | **JURY TRIAL DEMANDED** |
| | § | |

---

## PLAINTIFF'S ORIGINAL COMPLAINT

---

TO THE HONORABLE JUDGE OF SAID COURT:

Now comes Plaintiff Derrail R. Thomas ("Plaintiff" or "Thomas"), complaining of Defendant Cognizant Technology Solutions U.S. Corporation ("Defendant" or "Cognizant") and in support thereof shows the Court as follows:

### I.

### INTRODUCTION

1.01    Defendant wrongfully fired Plaintiff from his job in violation of the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq*. (the "FMLA").  Defendant also discriminated and retaliated against Plaintiff, harassed Plaintiff and subjected Plaintiff to a hostile environment based upon disability, and sex (gender) in violation of the Americans With Disabilities Act, as amended 42 USC § 12101 *et seq* and the Civil Rights Act of 1964, as amended.

### II.

### PARTIES

2.01    Plaintiff Derrail R. Thomas is an individual who is a citizen of the State of Texas.

Plaintiff can be contacted in care of his undersigned counsel.

2.02    Defendant Cognizant Technology Solutions U.S. Corporation is a foreign for profit corporation with a Texas address at 222 Las Colinas Blvd W, Suite 1250, Irving Texas 75039. Defendant's agent for service of process in the State of Texas is Corporation Service Company dba CSC - Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701-3218.

## III.

## Jurisdiction and Venue

3.01    Pursuant to 28 U.S.C. §1331, jurisdiction lies in the United States District Court for the Northern District of Texas, as this action involves a question of the application of federal law, including the Family and Medical Leave Act of 1993 (the "FMLA").

3.02    Venue for Plaintiff's causes of action stated herein lies in the Northern District of Texas because the acts alleged in this Complaint took place, in whole or in part, within the boundaries of this District pursuant to 28 U.S.C. §1391.

## IV.

## Factual Allegations

4.01    Plaintiff began working for Cognizant on November 9, 2021 as an Incident and Technical  Project Manager earning an annual compensation of $110,000.

4.02    Plaintiff was a hard working model employee.  In this role Plaintiff was assigned to 5 different Projects for external customers. Plaintiff has over 10 years of I.T. experience working in this related field.

4.03    Plaintiff's duties and responsibilities included Schedule and lead Client facing meetings, update technical project plans for scheduled releases, track, update, coordinate configuration changes that impacted production environments for Plaintiff's assigned clients.

4.04    Plaintiff's supervisor during while in this role was Shantanu Bera.  Shantanu Bera, is of Indian descent middle aged and has been employed with Cognizant for over 5 years.  Plaintiff's normal working hours were from 7:00 am to 4:00 pm.

4.05    In July 2022 Plaintiff began to have issues with Shantanu Bera as it relates to the lack of providing documentation for information related to supporting Plaintiff's clients. Initially Plaintiff thought it was a difference of working styles and poor communication as Shantanu has a heavy Indian accent and sometimes it makes transfer of information slow.

4.06    Plaintiff requested to have better training information and indicated that Plaintiff had a medical condition where he would need to use his lunch break to walk, stretch recover from issues related to his medical condition.  Shatanu asked what it was specifically, and Plaintiff told him it was related to his back.

4.07    Plaintiff began to schedule his 1-hour break occasionally between 11:00 am or 2:00 pm and made Shantanu aware. Shantanu began scheduling meetings during the same time frame as Plaintiff's 1-hour breaks. When Plaintiff would return to his computer, Shantanu would ask "why Plaintiff wasn't available for the meetings?" He began to scold Plaintiff for missing the meeting and did not care if it was medical related. He said, "if I am going to be sick a lot then I should not be in this project."  Plaintiff told him that he did not foresee missing a lot of work time.  Shantanu stated, "How can you complain about lack of training because you can't be available even for meetings?"

4.08    Plaintiff escalated the issue to HR and informed them that he was not getting adequate training to be successful in his role and informed HR why he missed any meetings scheduled. HR replied that if Plaintiff needed to miss some time from work that he could make a request for accommodation. Plaintiff agreed and made an FMLA request..

4.09    In September 2022, Plaintiff made an FMLA Request to Cognizant Human Resources. Human Resources said that Plaintiff had not worked enough hours at Cognizant to be approved for FMLA. HR informed Plaintiff that he could submit a ADA Request and see if it gets approved for Plaintiff's accommodation to miss time from work until he qualifies to for FMLA.

4.10    Plaintiff was told by HR that he would not qualify for FMLA until December of 2021.  So Plaintiff submitted his ADA Request to Cognizant HR NA Benefits and it was approved October 12, 2022.

4.11    In April 2023 as Plaintiff continued to work and utilize his ADA approved time to be away from work, Plaintiff noticed that his working conditions related to his interaction with Shantanu Bera kept getting worse. Shantanu began scheduling more meetings that would overlap times Plaintiff would schedule a ADA related break. Shantanu began scheduling meetings at the end of his work shift which would prevent Plaintiff from attending any medical appointments right after work. Shantanu began scheduling meetings at 3:00 am and 4:00 am in the morning with the Offshore India team for Plaintiff to attend and hold Plaintiff accountable for not receiving detailed information in those meetings.

4.12    In May 2023, Shantanu began withholding critical documentation needed to support the Cognizant Clients that Plaintiff was assigned to. Shantanu would say Plaintiff would know this

information or should know but Plaintiff was absent from work. He would say " you cannot provide flawless delivery to the client if you are not there in these meetings."

4.13    In June 2023, Plaintiff escalated the issue to Human Resources.  Plaintiff told HR that he  believed his work Performance Review was being held against him by his supervisor Shantanu Bera, because Plaintiff missed work hours related to his FMLA request. Plaintiff sent the email to 4 different Human Resource Managers. Ultimately, Plaintiff received a reply that he needed to send his complaint to a Human Resource Business Partner.  Plaintiff's HR Business Partners name is Cathy Erdoesy.

4.14    On June 6, 2023, Plaintiff sent an email to Cathy Erdoesy and scheduled a meeting to discuss his concerns related to his supervisor Shantanu Bera retaliating against him for using his approved FMLA time.  Plaintiff further stated that he believed that he was being discriminated against or retaliated against as it relates to FMLA. Plaintiff told her that he believed his performance review negatively impacted used against him because he missed time due to his FMLA/ADA absences. Cathy suggested that Plaintiff schedule a meeting with Shantanu to discuss the issue. Shantanu attended 1 meeting with Cathy to discuss the Performance review and listen to Plaintiff's concerns she declined subsequent meetings to discuss Plaintiff's FMLA concerns related to absences and Performance review.  Plaintiff told her that his concern as that he would not be able to apply for other positions or be promoted because his Performance Review was delayed or negative.

4.15    On June 9, 2023 Plaintiff was told by Shantanu Bera that Plaintiff would be released from the WHA Project because Plaintiff would not be able to support the project due to his medical condition. He also said Plaintiff would be put into a different project. Based on Shantanu's statement

Plaintiff assumed he would either remain in the other projects he was working on or be assigned to something different. Plaintiff's response to him was OK.

4.16    On or about June 20, 2023, Plaintiff sent an email to Mark Kelley (HR Director) and scheduled a meeting to discuss Plaintiff's concerns related to his supervisor Shantanu Bera retaliating against Plaintiff for using his approved FMLA time and his Performance review. Plaintiff was asked by Mark for the agenda for the meeting and rescheduled it.

4.17    On or about July 14, 2023, Plaintiff escalated the issue to Human Resources again to Cathy Erdoesy via email, to meet to discuss his FMLA concerns related to absences and Performance review. Plaintiff informed Cathy that his Performance Review was being rated negatively and that his Supervisor Shantanu Bera was declining additional meetings to resolve the issue per her suggestion. Plaintiff received no response from Cathy.

4.18    On or about July 17, 2023, Plaintiff escalated the issue to Corporate Ethics and Compliance via email. In the email Plaintiff clearly stated that he was being retaliated against for using FMLA/ADA.

4.19    On or about July 20, 2023, Plaintiff received an email response from the Ethics and Compliance Employee Relation Advisor with Employee Relations Management. It was a request to schedule a meeting to discuss his Ethics and Compliance complaint and issues with HR Talent management. Kimberly Legin sent the email. This meeting never occurred.

4.20    On or about July 25, 2023, Plaintiff received an email from Shantanu Bera informing Plaintiff that there was a termination request for him and to return his Cognizant Laptop.

4.21    On or about August 18, 2023, Plaintiff was terminated per the Cognizant Talent

Management Team. Plaintiff was unable to submit final timesheet requests for that week or claim any owed vacation time as he was blocked from accessing any work system.

4.22    It is clear that Cognizant terminated Plaintiff's employment due to his disability and/or perceived disability and his FMLA leave.

## V.

## FIRST COUNT

## FAMILY AND MEDICAL LEAVE ACT DISCRIMINATION, INTERFERENCE AND RETALIATION

5.01    The foregoing paragraphs in this Complaint are incorporated in this count by reference as fully as if set forth at length herein.

5.02    Plaintiff's ADA request was approved.  Defendant fired Plaintiff on August 18, 2023.

5.03    Defendant was subject to the provisions of the FMLA. Defendant employed at least fifty (50) employees within a seventy-five (75) mile radius of Plaintiff's work site for twenty (20) or more work weeks in the prior or current calendar year.

5.04    As a result of the interference, discrimination, retaliation and termination by Defendant, Plaintiff has suffered significant financial loss, including backpay and front pay and the loss of benefits of his employment, including health insurance.  Plaintiff is entitled to front pay and other equitable relief.   Discrimination and retaliation were motivating factors in Plaintiff's termination.

5.05    The aforementioned acts were and are a willful violation of the FMLA, and entitle Plaintiff to recover damages as provided by 29 U.S.C. § 2617, including liquidated damages. Plaintiff further seeks reinstatement to his position or a comparable position with reinstatement of

benefits and seniority time, and with appropriate injunctive relief.

5.06    As a result of Defendant's actions, Plaintiff has found it necessary to hire the services of the undersigned attorneys, for which Plaintiff seeks further relief.

VI.

**SECOND COUNT**

**DISABILITY DISCRIMINATION**

6.01    Plaintiff incorporates the foregoing paragraphs by reference as if set forth verbatim herein.

6.02    Defendant employs more than fifteen employees, and is an "employer" within the meaning of the ADA and the TCHRA.  Plaintiff filed a charge of discrimination with the EEOC and has since received a "right to sue letter."  Plaintiff files this action within 90 days of actual receipt of his "right to sue" letter.

6.03    Plaintiff suffers from a disability under the statutory definition provided in the ADA and under the TCHRA because Plaintiff had an actual impairment, a record of impairment, and/or was regarded as having impairment by Defendant.  Plaintiff actually had or was regarded as having a disability that substantially limited one or more major life functions, including work.

6.04    Plaintiff was and is a qualified individual for the job in question.  With reasonable accommodations, Plaintiff can and did perform the essential functions of his job. Defendant refused to engage in good faith in the interactive process with Plaintiff to determine reasonable accommodations, and fired him rather than provide accommodations including using sick leave for flareups and doctor visits. The requested accommodations would not have been an undue burden on Defendant.

6.05    An adverse employment action was taken against Plaintiff on account of his disability, because he was fired after having formally requested accommodations, including medical leave for his treatment.

6.06    Plaintiff was treated less favorably than non-disabled employees.

6.07    Defendant violated the ADA and state law by discharging Plaintiff and/or discriminating against Plaintiff in connection with compensation, terms, conditions or privileges of employment because of Plaintiff's record of, actual or perceived disability.

6.08    Such discrimination by Defendant against Plaintiff was intentional.  Accordingly, Plaintiff is entitled to recover damages from Defendant for back pay, front pay, past and future pecuniary losses, emotional pain and suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.  Further, this discrimination was done with malice or with reckless indifference to Plaintiff's protected rights.  Plaintiff is therefore also entitled to recover punitive damages.

6.09    Plaintiff is entitled to an award of attorney's fees, expert fees, and costs under the ADA and state law.

## VII.

## THIRD COUNT

### RETALIATION UNDER 42 U.S.C. § 2000E AND CHAPTER 21 OF TEXAS LABOR CODE

7.01    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs and incorporates the same as if set forth herein at length.

7.02    Plaintiff is an employee within the meaning of Title VII and Chapter 21 of the Texas Labor Code.

7.03    Defendant is an employer within the meaning of Title VII. 42 U.S.C. § 2000e(b).

7.04    Plaintiff timely filed with the Equal Employment Opportunity Commission and the Texas Human Rights Commission a charge of discrimination for disability and sex discrimination and retaliation against Defendant. Plaintiff received notice of the Right to Sue from the E.E.O.C. within ninety (90) days of the filing of this Complaint. A copy of the Notice of the Right to Sue letter is attached hereto as **Exhibit A**.

7.05    As a result of Defendants' unlawful employment practices, Plaintiff has suffered damages including lost wages, front pay, past and future pecuniary losses, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, and seeks to recover for those sums.

7.06    Defendant's action in taking retaliation against the Plaintiff for his complaints about discriminatory treatment and unlawful employment practices was intentional, willful and malicious so that Plaintiff is entitled to recovery of exemplary damages.

## VIII.

## FOURTH COUNT

## ATTORNEYS' FEES

8.01    Plaintiff incorporates the foregoing paragraphs of this Complaint as if set forth at length herein.

8.02    The preparation and filing of this Complaint has necessitated the hiring of attorneys. Plaintiff seeks to recover reasonable and necessary attorneys' fees as allowed by the ADA and the Texas Human Rights Act.

## IX.

## JURY TRIAL DEMANDED

9.01    Plaintiff hereby demands trial by jury of all claims for which he is entitled to demand a jury trial.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendant be cited to appear and answer herein, and that upon final trial, Plaintiff have and recover the following relief against Defendant:

(1)    Judgment for actual damages in the amount of past and future lost earnings and benefits and damages to past and future earnings capacity;

(2)    Liquidated and/or statutory damages;

(3)    Punitive/exemplary damages;

(4)    Preliminary and permanent injunctive relief reinstating Plaintiff to hIS position with full seniority and other benefits as if he had never been discharged;

(5)    Prejudgment and postjudgment interest at the maximum legal rate;

(6)    All costs of court;

(7)    Attorney's and expert fees; and

(8)    Such other and further relief to which Plaintiff may be justly entitled.

DATE: January 29, 2024

Respectfully Submitted,

**KILGORE & KILGORE, PLLC**

By: *W. D. Masterson*

W.D. Masterson
SBN: 13184000
wdm@kilgorelaw.com
3141 Hood Street, Suite 500
Dallas, Texas 75219
(214) 969-9099 - Telephone
(214) 953-0133 - Facsimile

**ATTORNEYS FOR PLAINTIFF,
DERRAIL R. THOMAS**