IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DERRAIL R THOMAS, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 3:24-CV-00223-E |
| COGNIZANT TECHNOLOGY SOLUTIONS US CORPORATION, | § § § § | |
| Defendant. | § § | |

### MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Cognizant Technology Solutions US Corporation's Motion to Dismiss or, in the Alternative, to Stay Proceedings and Compel Arbitration, which seeks to compel arbitration on all of Plaintiff Thomas's claims. (ECF No. 19). Having considered the motion, response, reply, and relevant portions of the record and law, the Court hereby (i) GRANTS the motion to compel arbitration; (ii) STAYS this case pending resolution of arbitration; and (iii) ADMINISTRATIVELY CLOSES this case.

### I.   BACKGROUND

This case arises from a dispute involving Thomas's employment and work separation from Cognizant. (*See* ECF No. 1). It is undisputed that Cognizant employed Thomas from December 27, 2021, until August 19, 2023. (ECF No. 19-1 at 5). The record shows that Thomas signed an arbitration agreement by electronic signature on November 15, 2021. (ECF No. 19-1 at 4, 8-9); *see generally* ECF no. 20-1). It is undisputed that Thomas could not begin work at Cognizant without first accepting an arbitration agreement. (ECF No. 19-1 at 2-5; ECF No. 20-1 at 4-6). The signed arbitration agreement in the record states:

As a condition of my employment or my continuing employment with Cognizant Technology Solutions Corporation, a Delaware corporation, or any of its subsidiaries, affiliates, successors or assigns (collectively, "Cognizant"), and in consideration of my employment or continuing employment with Cognizant and my receipt of salary and other compensation, training, and the other valuable consideration I am receiving and will receive in the future, and Cognizant's mutual promises set forth herein, I agree to the following provisions of this Mutual Arbitration Agreement (this "Agreement")

A.  Agreement to Arbitrate.

Cognizant and I agree that . . . **any disputes, claims, complaints or controversies** ("Claims") that I may have with Cognizant (or with any employee, officer, director, or shareholder of Cognizant, in their capacity as such), or that Cognizant may have with me, at any time, including any Claims relating to breach of contract, torts, wrongful discharge, **discrimination, harassment, retaliation**, overtime, wages, leaves, paid time off, sick days, compensation, equity entitlements, penalties or restitution (collectively, "Covered Claims") will be resolved by arbitration pursuant to the terms of this Agreement and NOT by a court or jury.

**I UNDERSTAND THAT I AM AGREEING FOREVER TO WAIVE AND GIVE UP THE RIGHT TO HAVE A JUDGE OR A JURY DECIDE ANY COVERED CLAIMS.** However, I understand that either Cognizant or I may ask a court for temporary or preliminary injunctive relief in aid of arbitration or to maintain the status quo pending arbitration.
. . .
Covered Claims that are subject to arbitration include, but are not limited to, Claims under the following laws and regulations:

- the Fair Labor Standards Act ("FLSA")
- Title VII of the Civil Rights Act of 1964 ("Title VII")
- the Age Discrimination in Employment Act ("ADEA")
- the Worker Adjustment and Retraining Notification Act ("WARN")
- the Equal Pay Act ("EPA")
- the Americans With Disabilities Act ("ADA")
- the Family and Medical Leave Act ("FMLA")

I further understand and agree that . . . **any other Claim under any federal, state, or local statute, constitution, regulation, rule, ordinance, or common law and any Claim arising in any way out of or directly or indirectly related to my application for employment with Cognizant, my employment with Cognizant, the terms and conditions of my employment with Cognizant, and the termination of my employment with Cognizant will also be subject to this Agreement and are also considered Covered Claims.**
. . . .

> **Each arbitration proceeding under this Agreement will be administered by Judicial Arbitration and Mediation Services, Inc. ("JAMS"), pursuant to its Employment Arbitration Rules and Procedures and the JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness ("JAMS Rules")**, which are available at www.jamsadr.com or from Cognizant upon request to Human Resources, except to the extent the JAMS Rules conflict with any express terms of this Agreement, in which case this Agreement will control.
>
> . . . .
>
> **The enforceability of this Agreement is governed by the FAA**. If for any reason the FAA is held to be inapplicable, the parties agree that the enforceability of this Agreement shall be governed by the laws of the state in which I last worked for Cognizant, without regard to choice or conflicts of laws rules.

(ECF No. 19-1 at 8-9) (emphasis added in bold). The arbitration agreement further states:

> **6) Opportunity to Review.** By my signature below, I acknowledge that:
> - I have read and I understand each provision of this Agreement;
> - I have had an opportunity to review this Agreement with legal counsel of my choosing;
> - I am not under duress and I am signing this Agreement freely and with knowledge of its contents;
> - I am not relying on any representations or promises that are not included in this Agreement; and
> - although this Agreement was drafted by Cognizant, it accurately reflects my intent and understanding and, in the event of any dispute, this Agreement will not be construed in favor of one party or the other, but rather in accordance with its plain meaning.

(ECF No. 19-1 at 9) (emphasis in original). The record contains Cognizant's December 22 and 24, 2021 confirmations that Thomas completed his onboarding documents. (ECF No. 19-1 at 23-26).

On January 29, 2024, Thomas filed his original complaint, which asserts claims of discrimination, harassment, and retaliation based on Title VII, the American's with Disabilities Act (ADA), and the Texas Commission on Human Rights Act (TCHRA). (*See* ECF No. 1). On April 11, 2024, Cognizant moved, *inter alia*, (i) to compel arbitration on all of Thomas's claims and (ii) for an according stay of this proceeding. (ECF No. 19). Thomas has responded, (ECF No. 20), and Cognizant has replied, (ECF No. 21). Having been fully briefed, Defendant's motion is ripe for adjudication.

## II.  LEGAL STANDARDS

**A. Arbitration Under the Federal Arbitration Act**

The Federal Arbitration Act (FAA) provides that a written agreement to arbitrate disputes arising out of an existing contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The statute does not permit a trial court to exercise any discretion, "but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original).

To assess whether a claim must be arbitrated, the Court conducts a two-step analysis. *Lloyd's Syndicate 457 v. FloaTEC, L.L.C.*, 921 F.3d 508, 514 (5th Cir. 2019); *see Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004). The first step is contract formation— whether the parties entered into *any arbitration agreement at all. Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016); *see Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996) (per curiam) (citations omitted). If the answer is yes, the Court proceeds to the second step. *Lloyd's Syndicate*, 921 F.3d at 514. The second step involves contract interpretation to determine whether a plaintiff's claim is covered by the arbitration agreement. *Kubala*, 830 F.3d at 201. Ordinarily both steps are questions for the court. *Kubala*, 830 F.3d at 201 (citing *Will–Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003)); *see First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts.").

Courts apply "the federal policy favoring arbitration when addressing ambiguities regarding whether a question falls within an arbitration agreement's scope, but we do not apply this policy when determining whether a valid agreement exists." *Sherer v. Green Tree Servicing LLC*, 548 F.3d 379, 381 (5th Cir. 2008) (citing *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1073–74 & n. 5 (5th Cir.2002)). In light of the strong federal policy favoring arbitration, "the Supreme Court has held that 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Safer v. Nelson Fin. Grp., Inc.*, 422 F.3d 289, 294 (5th Cir. 2005) (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).

### B. Delegation Clauses Within an Arbitration Agreement

However, when an agreement to arbitrate "contains a delegation clause giving the arbitrator the primary power to rule on the arbitrability of a specific claim, the analysis changes." *Kubala*, 830 F.3d at 202 (citing *First Options*, 514 U.S. at 942 (1995)). "Delegation clauses are enforceable and transfer [a] court's power to decide arbitrability questions to the arbitrator." *Kubala*, 830 F.3d at 202. "[A] valid delegation clause requires the court to refer a claim to the arbitration to allow the arbitrator to decide gateway arbitrability issues." *Kubala*, 830 F.3d at 202 (citing *Rent–A–Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010)).

"[I]f the party seeking arbitration points to a purported delegation clause, the court's analysis is limited." *Kubala*, 830 F.3d at 202. As the Fifth Circuit has explained:

> [The Court] performs the first step—an analysis of contract formation—as it always does. *But the only question, after finding that there is in fact a valid agreement, is whether the purported delegation clause is in fact a delegation clause*—that is, if it evinces an intent to have the arbitrator decide whether a given claim must be arbitrated. *Id.* If there is a delegation clause, the motion to compel arbitration should be granted in almost all cases.

*Kubala*, 830 F.3d at 202 (emphasis added).[1] The Fifth Circuit has further explained that "absent a challenge to the delegation clause itself, [courts] will consider the clause to be valid and compel arbitration. Challenges to the arbitration agreement as a whole are to be heard by the arbitrator." *Edwards v. Doordash, Inc.*, 888 F.3d 738, 744 (5th Cir, 2018) (footnote omitted); *see, e.g.*, *Noble Cap. Grp., L.L.C. v. US Cap. Partners, Inc.*, No. 20-50721, 2021 WL 3477481, at *2 (5th Cir. Aug. 6, 2021) (discussing the same).

### III.   ANALYSIS

#### A. Whether the FAA or Texas Arbitration Act (TAA) Applies

Cognizant argues that the FAA applies to this agreement. Thomas offers no response to this issue. (ECF No. 20).[2] Another district court in the Northern District of Texas has discussed waiver of argument when a party offers no response to an issue:

> "The Fifth Circuit makes it clear that when a party does not address an issue in his brief to the district court, that failure constitutes a waiver on appeal." *Magee v. Life Ins. Co. of N. Am.*, 261 F. Supp. 2d 738, 748 n. 10 (S.D. Tex. 2003) (citing *Lookingbill v. Cockrell*, 293 F.3d 256, 264 (5th Cir. 2002)). "**By analogy, failure to brief an argument in the district court waives that argument in that court**." *Id.*; *see also Everest Indem. Ins. Co. v. Allied Int'l Emergency LLC*, No. 4:08-CV-678-Y, 2009 WL 2030421, at *6 (N.D. Tex. July 14, 2009) (Means, J.) ("Defendants do not argue that coverage exists under these provisions in their response. Thus, any argument by Defendants to that effect is waived.").

*Lighting Ballast Control, LLC v. Philips Elecs. N. Am. Corp.*, No. 7:09-CV-29-O, 2011 WL 13128126, at *3 (N.D. Tex. May 25, 2011) (emphasis added in bold). The Court adopts this

---

[1] In determining whether parties entered into an agreement to arbitrate, courts must "distinguish between [(i)] 'validity' or 'enforceability' challenges and [(ii)] 'formation' or 'existence' challenges." *Maravilla v. Gruma Corp.*, 783 F. App'x 392, 395 (5th Cir. 2019) (some internal quotation marks omitted) (quoting *Arnold v. Homeaway, Inc.*, 890 F.3d 546, 550 (5th Cir. 2018)).

[2] Thomas's briefing in response to Cognizant's motion is extremely scant—referring only to his declaration and citing no law, whatsoever. (*See* ECF No. 20 at 1-2).

reasoning; by failing to respond in his brief, Thomas has waived his argument on the issue of whether the FAA or TAA applies. *See Lightning Ballast Control*, 2011 WL 13128126, at *3 (determining a party waived argument on an issue when the party failed to present the argument in response). Furthermore, the Parties agreements expressly provide that "[t]he enforceability of [the arbitration agreement] is governed by the FAA." (ECF No. 19-1 at 9). Nothing in the record indicates the FAA should not apply. For those reasons, the Court concludes the FAA applies to the purported written agreement to arbitrate disputes in this case. The Court pretermits discussion of the TAA's application as unnecessary.

### B. Whether an Agreement to Arbitrate Has Been Formed

Cognizant argues that an agreement to arbitrate was formed when Thomas electronically signed the arbitration agreement on November 15, 2021. (ECF No. 12-16). In response, Thomas argues that "there has never been an effective signed arbitration agreement." (ECF No. 20 at 2).

The record shows that Cognizant offered Thomas work on November 8, 2021. (ECF No. 20-1 at 4-6). The offer of work expressly mentions that employment is contingent upon an agreement to arbitrate disputes:

> This offer is **contingent** on the following:
> . . . .
> > • Your signing of the Confidential Information and Invention Assignment Agreement (CIIAA) and the **Mutual Arbitration Agreement (MAA)**;
>
> . . . .
> As an employee of Cognizant, you will be expected to comply with these policies, including our policy requiring your ongoing compliance with the CIIAA, **MAA**, and our policies prohibiting discrimination and unlawful harassment, conflicts of interest, and violation of any applicable laws in the course of performing your job duties.
> . . . .
> OFFER ACCEPTANCE: If you accept this offer, and the conditions of this offer are satisfied, this letter, the CIIAA, and the **MAA** shall constitute the complete agreement between you and Cognizant, with respect to the terms and conditions of your employment. Any representations, promises or agreements, whether written or oral, that aren't expressly written in this letter or are contrary to or conflict with

> this letter, which may have been made to you by any person, are expressly replaced by this letter. The terms and conditions of your employment pursuant to this letter may not be changed except as otherwise expressly specified in this letter or in the CIIAA or **MAA**.

(ECF No. 20-1 at 4-5) (emphasis added in bold).

The record shows Thomas made several attempts to accept work and sign the corresponding work documents. (*See* ECF No. 20-1 at 1-2). As discussed above, the record contains an electronically signed arbitration agreement dated November 15, 2021. (ECF No. 19-1 at 8-9). The record further contains employment documents between Cognizant and Thomas including: (i) a confidentiality agreement dated November 15, 2021; (ii) a benefits agreement dated November 15, 2021; (iii) a W-4 Employee's Withholding Certificate dated November 15, 2021; and (iv) final employment confirmation correspondence dated December 22 and 24 of 2021. (ECF No. 19-1 at 12-26).[3] Thomas asserts he had to accept the offer—and corresponding "Pre-boarding

---

[3] The record contains the declaration of Sue Petros—a Cognizant employee who works in human resources. (ECF No. 19-1 at 2-6). The Petros declaration explains Cognizant's onboarding process for employees, including the process for Thomas. (ECF No. 19-1 at 2-5). Inter alia, the Petros declaration states:

> To sign the documents included in new hire paperwork, including the Arbitration Agreement, the new hire clicks a box next to an Acknowledgment statement at the end of the document. When the new hire checks the acknowledgment box, the new hire's name is automatically entered on the document using information from their candidate profile and the document is time-stamped. The new hire then clicks "Submit" to sign. There is then a pop-up message that says, "form signed successfully." Any candidate could then individually print any signed document.
>
> All new hire paperwork, including signed arbitration agreements, is then stored in Cognizant's HR e-storage platform in the regular course of Cognizant's business. All new hire paperwork must be completed at any time prior to the new hire's start date.
> . . . .
> To access the Arbitration Agreement, Mr. Thomas had to click on the link sent to his personal email address (cameoisis@aol.com) and login to the Cognizant OnBoarding application with the Authentication Key in the email and then he creates a unique username and password during the application process. Mr. Thomas then had to click "Start Now" next to the Arbitration Agreement document title link. The Arbitration Agreement was electronically signed on November 15, 2021, by Mr. Thomas when he checked an acknowledgment box at the end of the document and clicked "Submit". Similarly, on this day, Mr. Thomas also signed a Confidential Information and Invention Assignment Agreement, his New Hire/Transfer Notice of Medical Election Form, and his Form W-4.

(ECF No. 19-1 at 3-4).

documents" several times electronically due to a "glitch in [Cognizant's] system." (ECF No. 20-1 at 1-2). Although Thomas asserts that the "Pre-boarding tasks are incomplete," Thomas does not controvert or contest (i) that he signed the arbitration agreement on November 15, 2021; (ii) that Cognizant required an employee's agreement to arbitrate—as indicated in his offer letter—before beginning work; and (iii) that he began work at Cognizant on December 27, 2021. (*See also* ECF No. 19-1 at 3) ("All new hire paperwork must be completed at any time prior to the new hire's start date").

Although Thomas avers his "Pre-boarding" documents were incomplete, no evidence in the record shows Thomas did not sign the arbitration agreement or that an agreement to arbitrate had not been formed. Thomas offers no further evidence or briefing that he did not enter into the arbitration agreement with Cognizant. (*See* ECF No. 20). Upon review of the record of the Parties' agreements, the Court must find and conclude that Thomas and Cognizant formed an agreement to arbitrate.

### C. Whether the Purported Delegation Clause Delegates the Claims and Issues Raised to the Arbitrator

Cognizant argues that all of Thomas's claims are subject to a delegation clause in the arbitration agreement, which reserves all questions of arbitrability to the arbitrator. (ECF No. 19 at 17). Again, Thomas offers no response to this issue and has consequently waived his argument on this issue. *See Lightning Ballast Control*, 2011 WL 13128126, at *3 (collecting cases).[4]

Regarding arbitrability, the arbitration agreement contains the language that "disputes regarding the scope, validity, applicability, enforceability or breach of this Agreement, or **the arbitrability of any Claim, must be resolved in arbitration under this Agreement**." (ECF No.

---

[4] Thomas does not challenge the validity of the delegation clause, itself. *See Edwards v. Doordash, Inc.*, 888 F.3d 738, 744 (5th Cir, 2018).

19-1 at 8). Since the arbitration agreement anticipates that each arbitration shall proceed under the JAMS Rules, the Parties expressly adopted the JAMS Rules into the arbitration agreement. (ECF No. 19-1 at 9). The Fifth Circuit has explained that such adoption of the JAMS Rules constitutes clear and unmistakable evidence that parties have agreed to arbitrate arbitrability:

> The JAMS Rules provide, in relevant part, that "[j]urisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter." **"[T]he express adoption of these rules presents clear and unmistakable evidence that the parties agreed to arbitrate arbitrability."** *Petrofac, Inc.*, 687 F.3d at 675 (concluding that express adoption of AAA arbitration rules showed parties' intent to arbitrate arbitrability).

*Cooper v. WestEnd Capital Mgmt., L.L.C.*, 832 F.3d 534, 546 (5th Cir. 2016) (concluding, "[t]he Arbitrator did not exceed his powers in making this award," after the Arbitrator determined arbitrability.) (emphasis added in bold); *see also, e.g.*, *Phillips v. Neutron Holdings, Inc.*, No. 3:18-CV-3382-S, 2019 WL 4861435, at *2 (N.D. Tex. Oct. 2, 2019) (discussing the same under the JAMS Rules and compelling arbitration); *Miller v. ConocoPhillips Co.*, No. 4:20-CV-1634, 2021 WL 4027054, at *2 (S.D. Tex. Mar. 4, 2021) (discussing the same and compelling arbitration). "When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68 (2019). Here, the terms of the arbitration agreement and adoption of the JAMS Rules evinces an intent to have the arbitrator decide whether a given claim must be arbitrated. *See Kubala*, 830 F.3d at 202.

The Court finds and concludes Thomas's claims must be referred to arbitration to resolve any disputes of arbitrability. *See Kubala*, 830 F.3d at 203 (stating that if an agreement contains a delegation clause, the court "must refer the claim to arbitration absent some exceptional

circumstance"); *Petrofac*, 687 F.3d at 675 (determining that—given the parties' adoption of the American Arbitration Association Rules—the arbitration panel properly determined whether the issue of damages was arbitrable); *Cooper*, 832 F.3d 534, 546 (determining the arbitrator did not err in deciding arbitrability). The Court GRANTS Cognizant's motion to compel arbitration against Thomas. Consequently, the Court pretermits any further discussion on the merits of Thomas's claims. *See Kubala*, 830 F.3d at 202; *Henry Schein*, 586 U.S. at 67-9.

### D. Whether to Stay Pending Litigation

Cognizant requests a stay of the proceedings pending arbitration. (ECF No. 19 at 19-20). In cases in which one of the parties to a valid arbitration agreement brings a claim to a district court, the court "shall stay the trial of the action until such arbitration" is resolved. 9 U.S.C. § 3. "[A] stay is mandatory upon a showing that the opposing party has commenced suit upon any issue referable to arbitration under an agreement in writing for such arbitration[.]" *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992). Generally, this section applies only to parties to the arbitration agreement. *Adams v. Georgia Gulf Corp.*, 237 F.3d 538, 540 (5th Cir. 2001).

As concluded above, a stay of litigation on Thomas's claims is warranted because those claims are referable to arbitration. *See Alford*, 975 F.2d at 1164. The Court GRANTS Cognizant's motion to stay all proceedings in this matter. Additionally, to reduce the burdens on the Court and the Parties of maintaining this as a pending case during the stay, the Court concludes in its discretion that this action should be administratively closed, for statistical purposes, pending resolution of the arbitration.

### IV. CONCLUSION

For the reasons enumerated above, the Court GRANTS Cognizant's motion to compel arbitration. The Court further grants Cognizant's motion requesting a stay of the proceedings.

Accordingly, the Court enters the following orders:

1. IT IS ORDERED THAT Plaintiff Thomas's claims are compelled to arbitration with Cognizant.

2. IT IS ORDERED THAT all remaining pending motions and proceedings in this Court are immediately STAYED, pending resolution of the arbitration. The pending motions before the Court shall not be terminated.

3. IT IS ORDERED THAT this case shall be administratively closed for statistical purposes, pending resolution of the arbitration. The Parties shall not make further filings into this case except (i) for the reports regarding the status of arbitration—instructed hereunder—and (ii) on leave of court. *Inter alia*, the case may be re-opened in the future, without payment of filing fees, upon written motion from any party after conclusion of all arbitration proceedings.

4. IT IS ORDERED THAT the Parties shall file a report regarding the status of the arbitration every one-hundred-and-twenty (120) days after the date of this Order.

**THIS IS NOT A FINAL ORDER.**

**SO ORDERED.**

22nd day of May, 2024.

ADA BROWN
UNITED STATES DISTRICT JUDGE